FISHBURNE *v.* SMITH.

1. EVIDENCE—PRACTICE.—Where the record fails to show that any motion was made before the Circuit Judge to suppress testimony taken *de bene esse*, exceptions alleging error in not suppressing such testimony cannot be considered.
2. DISCONTINUANCE.—Where an agreement provides for the discontinuance of an action for foreclosure and a sale of the mortgaged premises

by trustees, an order of discontinuance should be entered on the record of that action before a sale is had under the agreement.

3. AMOUNT DUE—APPLICATION OF PROCEEDS.—A decree of sale should not direct the application of the cash portion of the sale to a mortgage lien, until it has been ascertained what is the amount of the debt so secured.

4. COMPLIANCE WITH BID.—Land was offered for sale under a mortgage for one-third cash in 20 days, $1,000 thereof to be paid down at time of sale, and was bid in by the mortgagor for more than $1,000 in excess of all liens and charges, who thereupon offered his receipt for $1,000 of the surplus coming to him as a payment of the cash then required. *Held*, that this was no compliance, as it required more than one-third of his bid to satisfy the mortgage, which was to be first paid.

5. EVIDENCE.—In action under an agreement, whereby a mortgagor conveyed the mortgaged premises to two persons to sell and pay the purchase money mortgage out of the proceeds, testimony of all prior transactions relating to the purchase of the land, a foreclosure suit, &c., was incompetent.

6. SALE BY TRUSTEE.—These two persons advertised the sale, but only one was present, and the agent of the mortgagees made a bid which was withdrawn at the suggestion of the seller, and then made a lower bid, which was accepted as the highest and last. *Held*, that this sale could not be sustained, as the property sold at the instance of the trustee for sale for less than the purchaser was willing to give.

7. COMPLIANCE WITH BID.—*Held* further, that the purchase was not complied with, because no cash was paid or tendered as required by the terms of sale; for while the bidder represented the encumbrancers to whom the net cash proceeds of sale was due, the costs and expenses of sale had first to be paid to others, and to that extent cash was necessary.

8. GENERAL EXCEPTIONS, specifying no particulars of error, not considered.

9. SALES.—Plaintiff at this sale having made a bid which defendant ignored, and defendant's subsequent bid not being sustained by the court, a decree was properly passed directing a resale.

Before FRASER, J., Colleton, August, 1890.

This was an action by Julian Fishburne against H. A. M. Smith, A. M. Lee, and H. D. Elliott, commenced April 24, 1890. The Circuit decree was as follows:

This case is before me for a hearing on the merits, in pursuance of an order made by consent at the term of the court held

in June, 1890. It has been heard on the pleadings and testimony taken out of court, on notice in pursuance of the act. The parties were represented by counsel and the cause fully argued, several exceptions to the testimony were noted; but I think it necessary to say only that I regard all testimony as to matters which occurred previous to the execution by plaintiff, 6th November, 1889, of the deed to H. A. M. Smith, A. M. Lee, as incompetent.

Julian Fishburne, the plaintiff in this case, had given to H. A. M. Smith, one of the defendants in this case, a mortgage of a tract of land mentioned in the complaint, and known as Hoats, to secure bond payable to Mrs. Lowndes and others, one of which, and the first one payable, had been assigned to C. C. Pinckney, jr. Fishburne having made default in payment, action was commenced against him by Mr. Smith for foreclosure. A. M. Lee was one of the attorneys for the plaintiff in this action in that suit for foreclosure. While this action was pending, and for the purpose of meeting the issues involved and paying the debt, the deed of 6th November, 1889, and the paper expressing the trust on which the conveyance was made, were executed.

In an order overruling a demurrer to the answer of some of the defendants, I have indicated my opinion that the formal discontinuance of the action for foreclosure was not a condition precedent to the right of Mr. Smith and Mr. Lee to execute the trusts created by the within instrument.

I have not changed the opinion therein expressed, that the tender of his receipt for one thousand dollars by the plaintiff in this action was not the equivalent of the tender of one thousand dollars in money, because the first money received by the trustees was applicable to certain expenses and the debt, and not to the surplus in which alone he had any interest.

The next question is, whether Mr. Elliott is entitled to have a conveyance of the bond at his bid, $30,000, at the sale which the two trustees attempted to make in pursuance of the power vested in them. By an arrangement made by the two trustees, the land had been duly advertised and offered for sale by Mr. T. Pinckney Lowndes. The property was bid off for plaintiff at $44,000, and he having tendered only the receipt above referred to instead of $1,000 in money, the property was again put up; at this sec-

ond offering the property was run up by Mr. Elliott to $39,950, and at the *suggestion of Mr. Smith*, this bid was withdrawn and the property again was bid off for plaintiff for $36,000. He tendered the same or a similar receipt in place of the cash, and it was again refused, and the property put up a third time and bid off by Henry D. Elliott, who did not pay or tender the one thousand dollars required by the published terms of sale. This last bid of Elliott was at $30,000, as heretofore stated.

Mr. Lee was not present at the sale, but was absent from the State. Mr. Smith was attorney for all the holders of the bonds, and was the trustee to whom the mortgage was made. At the same time he and Mr. Lee were trustees to make the sale for the benefit of the bondholders, and for the plaintiff as to the surplus; he occupied a double relation to the property and represented conflicting interests. Now, this seems to me to involve the same principle as was involved in the case of *Anderson* v. *Butler*, 31 S. C., 183. While in that case the court recognized the right of such a trustee to purchase at a *judicial sale*, yet suggested as to other property which the trustees had a right to sell without the intervention of the court, that a partition would most likely give satisfaction, it seems to me that this advice was given for the same reason which had induced the Circuit Judge in that case to order a sale by the master, with an express provision that the trustee might protect himself at the sale by bidding on the property, which he would not have a right to do at a sale made by himself. *Ex parte Wiggins*, 1 Hill Ch., 353; also *McCelvey* v. *Thomson*, 7 S. C., 201. Mr. Elliott in this whole matter acted under the advice and instruction of Mr. Smith and on behalf of the creditors, and I think that the withdrawal of the bid for $39,950 under his advice rendered void the subsequent sale to him at $30,000. In such cases the court cannot consider the question whether the amount bid was or was not a fair price.

If, however, you admit this bid to have been regular and valid, it has not been complied with. I am satisfied that a creditor who bids at such sales is not bound to pay in any money which is coming to him, and that it is not necessary even to tender a receipt for it. In this case certain expenses provided for in the mortgage and bill of sale were first payable out of any money

realized from this sale, and the creditors were not entitled to anything until these were paid. This was a joint power of sale, and one of the trustees was absent. And even if the two had a right to waive the cash or any part of it, it seems to me to be clear that one trustee had no such right in the absence of the other. For these reasons I do not regard the sale to Mr. Elliott as valid and another sale will be necessary.

The time fixed by the deeds for the sale has passed, and an order from the court will be necessary. I understand that the trustees prefer that the sale shall be made by the master, if to be made at all. It is therefore ordered and adjudged, that the master for Colleton County, after due advertisement in some newspaper published in said county, and one in the city of Charleston, do sell the premises described in the complaint on salesday in October next, or on some subsequent salesday, for five thousand dollars in cash and the balance on a credit of one or two years, with interest from day of sale, payable annually until the whole is paid, to be secured by a bond of the purchaser and a mortgage of the premises. It is ordered, that if the creditors, or any of them, should become purchasers at the said sale, the receipt for so much of the proceeds as may be coming to said purchaser, as due on the bond or bonds, shall be regarded as so much cash. By consent in writing, filed with the record in this case, the master is authorized to make the sale in the city of Charleston.

It is ordered, that the expenses of sale and the costs and fees of the master and other officers of this court be paid out of the cash proceeds of sale, and the balance of the cash paid to C. C. Pinckney on his bond, and that the master do hold the bond and mortgage taken by him subject to the further order of the court, to be paid out to the parties entitled to the same, on the coming in of the report of the master on the matters hereinafter referred to him. There is testimony which satisfies me that there is more due to C. C. Pinckney than will be paid out of the cash, but the precise amount of the debt due on the several bonds cannot be ascertained without a reference to the master, and other amounts may be chargeable on the bond. It is therefore ordered, that it be referred to the master to inquire and report what is the amount due on the several bonds secured by the mortgage, and also to

inquire and report on all claims on the fund arising from said sale, including all legitimate expenses covered by the mortgage or incurred by the trustees, H. A. M. Smith and A. M. Lee, and amounts due them.

It is ordered, that all the costs not hereinbefore provided for be paid by the parties respectively incurring them. Ordered, that parties may apply at the foot of this decree for any order proper to carry out the same.

Defendant appealed on the following grounds:

1. That his honor, the presiding judge, erred in not holding that the defendant, Henry D. Elliott, was the highest and only *bona fide* bidder at the auction sale of the premises described in the complaint on the seventh day of April, 1890, and as such highest *bona fide* bidder was entitled to a conveyance of the same.

2. That his honor erred in not suppressing the deposition of Julian Fishburne for his failure to answer the questions propounded to him on his cross-examination.

3. That his honor erred in holding that all testimony as to matters which occurred previous to the execution by plaintiff of the deed of 6th November, 1889, was incompetent.

4. That his honor erred in holding that the withdrawal by the defendant Elliott of the bid of $39,950, under the suggestion of the defendant Smith, rendered void the subsequent sale to Elliott for $30,000.

5. That his honor erred in not holding that all bids made by the plaintiff or any one on his behalf were puffing, fictitious, and void, and that it was the duty of the defendant Smith, upon ascertaining that fact, to disregard the same and to give the property to the highest *bona fide* bidder.

6. That his honor erred in holding that it was incumbent upon the defendant Elliott at the sale to pay the $1,000 in cash, but should have held that the defendant Elliott represented the parties to whom the entire purchase money was to be paid, had a right to have the deposit of $1,000 credited on the amount due, and could not be required to pay the same in cash.

7. That his honor should have held that the defendant Smith and the auctioneer were fully authorized under the circumstances

to dispense with the payment of $1,000 cash by Henry D. Elliott, he being the holder for the purchase of all the bonds to which the payment of the purchase money was to be applied, and therefore the payment of the $1,000 by him was in effect a payment to himself.

8. That his honor should have held that the purchase money being insufficient to discharge the amounts due by the plaintiff on his bonds, it was a matter of no moment to him whether the $1,000 cash was paid or not, and that the defendant Smith at the sale was fully authorized to waive the payment of the same by the defendant Elliott.

9. That his honor should have held that the plaintiff by his conduct had excluded himself from any right of exceptions to the sale, and that no bid of his or by any one for him should have been considered.

10. That his honor should have dismissed the complaint for want of equity on the part of the plaintiff, in that by his improper conduct he had himself caused and brought about the alleged failure of the sale, and was not entitled to the assistance of the court to enforce doubtful rights under such circumstances.

11. That his honor should have held that if the sale to the defendant Elliott was invalid, that then and in that case the plaintiff was bound to take the property at his first claimed $44,000, and should have ordered him to comply with his bid for that amount or lose all right to the property.

12. That his honor erred in ordering a resale of the property, but should have adjudged that the plaintiff, if he had any right, was bound to comply with his bid of $44,000, and pay the one-third cash into court, and on his failure so to do, that the defendant Elliott was entitled to the property at the price bid by him.

13. That his honor erred in ordering a sale for $5,000 cash, balance in one and two years, whereas by the terms of the complaint and the agreement on which it was founded, his honor was bound, if a sale was ordered, to order it in accordance with the terms of the agreement, to wit, for one-third cash, balance in one and two years.

Plaintiff's exceptions were as follows:

1. Because his honor, the presiding judge, erred in not striking

out and suppressing the deposition of defendant Smith for his refusal to answer questions on the cross-examination.

2. His honor, the presiding judge, erred in not decreeing a discontinuance of the suit of "*H. A. M. Smith, trustee, against Julian Fishburne,*" before a resale of the premises as ordered in said decree.

3. His honor, the presiding judge, erred in decreeing the cash proceeds of resale to be paid C. C. Pinckney, before due proof by him of his bond as holder and owner thereof, at and after the commencement of this suit, and before the report of the master as to amount due.

4. Under the alternative relief prayed in the complaint, that the presiding judge erred in holding that the tender of his (plaintiff's) receipt for one thousand by the plaintiff in this action, on his bid of forty-four thousand dollars, was not the equivalent of the tender of one thousand dollars in money.

*Messrs. Bryan & Bryan,* for plaintiff.

*Mr. Julian Mitchell,* for defendant Smith.

August 12, 1891.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The defendant Smith, as attorney of Mrs. Lowndes, Mrs. Minott, and Mrs. Elliott, sold and conveyed to the plaintiff herein a certain tract of land in Colleton, known as "Hoats," belonging to the three ladies named, for the sum of thirty-six thousand dollars, a portion of which was paid in cash, and the balance secured by several bonds, payable at different dates, together with a mortgage, which bonds were payable to Smith as trustee of the ladies above named.   Default having been made in the payment of the bond first maturing, Smith commenced an action to foreclose the mortgage, to which Fishburne appeared by his attorneys, Smythe & Lee.   While this action was pending, an agreement was entered into on the 6th of November, 1889, by Fishburne, Smith, and the defendant, A. M. Lee, a member of the firm of Smythe & Lee, containing the following stipulations:

"*First.* The present proceedings to be withdrawn, Mr. Fish-

22—34

burne paying all costs. *Second.* Mr. Fishburne to execute and deliver to A. M. Lee and H. A. M. Smith a deed of conveyance of the property. This deed not to be recorded before the seventeenth day of February, eighteen hundred and ninety, unless some proceedings or liens are threatened against Mr. Fishburne. *Third.* If Mr. Fishburne does not settle, on the 17th of February, eighteen hundred and ninety, all amounts then due, the property to be advertised and sold at Charleston on the first Monday in April by Messrs. Lee and Smith on terms, one-third cash, balance in one and two years, with annual interest, secured by mortgages. Messrs. Lee and Smith to adopt such measures as they may think proper to secure sale to a responsible bidder. *Fourth.* Proceeds to be applied to all costs and expenses provided for in this mortgage and of the sale, and then to the mortgage debt, and balance to Julian Fishburne."

The amount due not having been settled on the day appointed by this agreement, the property was advertised for sale by Lee and Smith on the 7th of April, 1890, on the following "terms: one-third ($\frac{1}{3}$) cash, viz., one thousand dollars when the property is knocked down, and the rest in twenty days from the day of sale; balance in one and two years, with interest at 7 per cent. per annum, payable annually, secured by bond of the purchaser and mortgage of the purchased premises."

It appears that within a very short time before the sale—perhaps an hour—Fishburne had spoken to a broker, Hyde, to attend the sale and bid on the property for him up to a specified amount, and finding that there was some doubt whether Hyde would be able to attend the sale, he made a similar arrangement with another broker, Marshall, but it turned out that both of these gentlemen attended, neither knowing that the other had been employed by Fishburne. When the property was first offered for sale, Marshall being the highest and last bidder, at the sum of $44,000, the property was knocked down, when he gave the name of Fishburne as purchaser, and a paper signed by Fishburne acknowledging the receipt by him from Smith and Lee of the sum of one thousand dollars, on account of the surplus proceeds of sale coming to him, was tendered to the auctioneer as the cash payment required by the advertisement to be made

when the property was knocked down. This receipt was referred to Smith, who was directing the sale, Lee being then absent from the State, and he declined to receive it and directed the auctioneer to proceed with the sale. When the property was offered the second time it was run up by the defendant Elliott, who claims to have been acting as the agent of the ladies to whom the debt was really due, to the sum of $39,950, when that bid was withdrawn by Elliott, at the suggestion of Smith, and the property was finally knocked down to Hyde, at the sum of $36,-000, who gave the name of Fishburne as the purchaser, when the same receipt was again offered and refused, and the auctioneer was again directed to proceed. The property was then offered a third time and bid off by Elliott for the sum of $30,000, but no cash or receipt was offered by him, in compliance with the requirement that one thousand dollars should be paid ; Mr. Smith saying, in response to the demand of Mr. Fishburne that this requirement should be complied with, that he knew Elliott to be the representative of the parties really entitled to the proceeds of the sale, and this bid was therefore practically a cash bid, and that he would be personally responsible for the credit on Fishburne's bond of the one thousand dollars.

A few days after the property was thus offered for sale, Fishburne addressed a note to Smith, asking for a statement "showing amount of costs and expenses provided for in mortgage and of the sale and amount of the mortgage debt," saying he wished to provide for a prompt settlement of his bid of $44,000. To this Smith replied, saying that the property "was sold on 7th April, 1890, to Mr. Henry D. Elliott at public auction. To him as the purchaser will the title be made." Thereupon this action was commenced, in which the plaintiff demands judgment that the sale made on the 7th of April, 1890, together with all proceedings thereunder be declared null and void, and that a resale may be made under the direction of the court, for the purpose of carrying out the true intent and meaning of the agreement of 6th of November, 1889, and requiring that the proceedings therein mentioned be withdrawn as covenanted therein. And as alternative relief, that plaintiff have a decree for the specific performance of the contract of sale made with him on the 7th of April,

1890, at the sum of forty-four thousand dollars; that the proceedings referred to in the agreement of 6th of November, 1889, be withdrawn; that the defendants, Smith and Lee, may account to him for any surplus that may remain after providing for the payment of all costs and expenses provided for in the mortgage and of the sale, as well as the mortgage debt; and that the alleged sale to Elliott be declared null and void.

The case was heard by his honor, Judge Fraser, who held that there was no necessity for any formal discontinuance of the proceedings commenced by Smith as trustee against Fishburne for the foreclosure of the mortgage above referred to, as a condition precedent to the right of Smith and Lee to make the sale, under the agreement of 6th of November, 1889; but that in fact there had been no valid sale; that the alleged sale to Elliott could not be sustained, because he had withdrawn a bid made by him higher than that at which the property was knocked down to him, and this was done "*at the suggestion of Mr. Smith,*" as well as because he never complied with the terms of the sale by paying or tendering the one thousand dollars cash required to be paid when the property was knocked down; that the alleged sale to the plaintiff could not be sustained, because he did not comply with that requirement; that another sale should be made, and it being understood that the trustees (Smith and Lee) preferred that it should be made by the master, he ordered that officer to make the sale after due advertisement, at a time specified, on the following terms, viz., five thousand dollars cash and the balance on a credit of one and two years. He further ordered that after paying the costs and expenses of the sale, the balance of the cash payment be applied to the bond held by C. C. Pinckney, jr. (the bond first maturing having, as it seems, been transferred to him), the Circuit Judge being satisfied from the testimony that there is more due on Pinckney's bond than will be paid out of the cash; but as the precise amount due on the other bonds had not been ascertained, a reference was ordered for that purpose, and in the meantime the master is to hold the bond and mortgage subject to the further orders of the court. This statement of the provisions of the decree will be sufficient to indicate the questions raised by this appeal; but for a more complete statement, refer-

ence may be had to the decree as set out in the "Case," which should be incorporated in the report of this case. From this decree the plaintiff, as well as the defendants Smith and Elliott, appeal upon the several grounds set out in the record.

The plaintiff, in his first exception, imputes error to the Circuit Judge "in not striking out and suppressing the deposition of defendant Smith, for his refusal to answer questions on the cross-examination." In this connection we will also consider defendants' second exception, presenting a similar question in regard to the suppression of the plaintiff's testimony on the same ground. Without entering into any discussion as to the merits of the questions raised by these exceptions, it is sufficient to say that, so far as we can discover, the record does not show that any motion to suppress the testimony of either of these witnesses was ever presented to or passed upon by the Circuit Judge, and there is therefore nothing for this court, as an appellate tribunal, to review.

The second exception of plaintiff charges error in not requiring a formal discontinuance of the action for foreclosure, instituted by Smith as trustee against the plaintiff herein, before the resale ordered by the decree. This exception is, we think, well taken. While it may be true that, so far as the parties to this record are concerned, no formal discontinuance of that action may be necessary, inasmuch as they have full knowledge of the agreement to that effect, yet as the purpose of the resale is that the property shall bring its full value, any cloud on the title, even though apparent only, arising from the pendency of that action, and the filing of the notice of *lis pendens* therein, should be removed, in order that outsiders who may know nothing of this agreement be not deterred from bidding by this apparent cloud, and that there may be full and free competition. It seems to us, therefore, that the Circuit decree should in this respect be modified by providing for a formal discontinuance to be entered on the record of that action.

The third exception in regard to the application of the cash payment to the Pinckney bond before due proof of the amount due thereon, is also well taken. While it may be, and no doubt is, quite true that the testimony was sufficient

to show that more was due on this bond than could be paid out of the cash payment of $5,000 required by the decree, yet as we think defendants' thirteenth exception to this provision of the Circuit decree is well taken, inasmuch as the resale should be made on the same terms stipulated for in the agreement of 6th of November, 1889, it will be necessary to modify the decree to conform to this view. For until the sale is made, it cannot be ascertained whether the cash payment of one-third, which should be required, will be more or less than sufficient to pay the amount due on the Pinckney bond, and hence such amount must first be ascertained before any order as to the application of the cash proceeds, except so far as costs and expenses are concerned, can properly be made.

Plaintiff's fourth exception cannot be sustained, for the reasons stated by the Circuit Judge. The plaintiff was only entitled to any surplus over and above the amount of costs and expenses and the amount due on the mortgage debt, which unquestionably were all entitled to be paid in full before the plaintiff could be entitled to receive a dollar. To allow his receipt for one thousand dollars out of the surplus, if there should prove to be any, to be received as cash, would practically give him the first proceeds of the sale. whereas in fact he was the last to be paid. It is true that the testimony does seem to show that the mortgage debt, together with all costs and expenses, would not exceed the sum of $40,000, which would leave a surplus of about $4,000 out of the bid of $44,000 made by plaintiff; but granting this to be so, he could not be entitled to any portion of the $4,000 until the claims having precedence were fully provided for, and hence his receipt for a portion of a sum which might be coming to him in the future could not be treated as cash.

Turning to defendants' exceptions, we will take up first the third exception, which imputes to the Circuit Judge error in holding "that all testimony as to matters which occurred previous to the execution by plaintiff of the deed of 6th November, 1889, was incompetent." Defendants had offered testimony as to the various negotiations and transactions between Smith and Fishburne as to the original sale of the land, and the reasons which prompted it, as well as to what passed between

these parties on the failure of Fishburne to meet the first pay-ment, and as to Fishburne's course in defending the action for foreclosure brought against him by Smith as trustee, with a view to show that Fishburne had not acted in good faith, and was resorting to all practicable means to obstruct Smith in collecting the debt due to him as trustee.   It appears, however, that all these matters culminated in the execution of the agreement of 6th November, 1889, and when Fishburne, in pursuance of one of the terms of that agreement, conveyed the land to Smith and Lee, they assumed the duty of selling the land to the best advan-tage of all parties concerned, and the only question here, or rather the primary inquiry here, is, whether that duty has been properly performed, and if not, whether the court shall now require its proper performance.   We do not see, therefore, what these prior negotiations and transactions have to do with our present inquiry ; and we do not think that there was any error on the part of the Circuit Judge in holding that all the testimony as to matters which occurred prior to the execution of the agreement of 6th November, 1889, was incompetent.

The first, fourth, fifth, sixth, seventh, and eighth exceptions, relating to the ruling of the Circuit Judge that the alleged sale to Elliott was invalid and could not be sustained, may be considered together.   It seems to us that the reasons given by his honor are amply sufficient to vindicate his conclusion.   Under the agreement of 6th November, 1889, there can be no doubt that it became the duty of Smith and Lee, as trustees to that extent at least, to sell the property to the best advantage, and Lee being absent from the State at the time of the sale, that duty was devolved upon Smith, and there is as little doubt that the property could have been sold to Elliott for a sum much larger than that at which it is now claimed that he bought it ; for Elliott himself testifies that he went to the sale with the intention of bidding in good faith as high as $40,000, and the undisputed fact is that he did actually bid $39,950. When, therefore, a sale at those figures was prevented by the suggestion of Smith to withdraw that bid, upon which suggestion Elliott acted, we do not see how a Court of Equity can sustain a sale for a much less sum to the same person who had publicly

proclaimed his willingness to bid a much larger sum, and had been deterred therefrom by the trustee, whose duty it was to obtain the highest price for the property. It may be and doubtless was the fact that Mr. Smith acted in entire good faith, and honestly believed that Elliott was induced to raise his bid as high as the amount above stated by puffing bids, which were not made in good faith. But such suspicion, or even belief, would not, in our judgment, justify his course (occupying the position of trustee, as he did), in defeating a sale at the higher price, even though he was also in the position of attorney for the bidder. His proper course, as it seems to us, was to allow the sale to proceed, and when the property was knocked down to Elliott, let him make the question, if he so desired, whether he could be relieved upon the ground of the alleged puffing bids made at the sale.

But, in addition to this, when the property was offered a third time and was bid off by Elliott for $30.000, he never complied with the terms of the sale by either paying or tendering the one thousand dollars in cash as required. Even assuming that Elliott was bidding as the agent of the bondholders, though there might be a question whether he had any sufficient *legal* authority to do so, this would not relieve him from the necessity of making the cash payment required; for although it may be true that one who is entitled to the proceeds of a sale may not be required to comply with that term of the sale providing for the payment of so much cash, as his receipt may be taken as such, yet the proceeds of this sale were first to be applied to the payment of certain costs and expenses, and therefore even if the holder or holders of the bond had in person bid off the property, the cash payment would have had to be made, or at least so much thereof as would be necessary to pay such costs and expenses; and in this case it is not pretended that Elliott either paid or tendered any cash at all. It is clear, therefore, that in no view of the case can the alleged sale to Elliott be supported.

The ninth and tenth exceptions, alleging in general terms that the plaintiff by his improper conduct caused the alleged failure of the sale, and therefore has no right to complain of the

same, or to demand any relief on account thereof, cannot be sustained. These exceptions do not specify any particular instances of alleged misconduct on the part of the plaintiff, and we find nothing in the Circuit decree upon which they can be based; nor do we think that they can be sustained by the testimony.

The eleventh and twelfth exceptions may be considered together, as they both are based upon the ground that the Circuit Judge erred in not requiring the plaintiff to comply with his bid of $44,000, the former insisting that upon his failure to do so, that he should "lose all right to the property," and in the latter that upon the failure of the plaintiff to comply, the defendant Elliott should be entitled to take the property at his bid of $30,000. From what has been already said, it is clear that neither of these exceptions can be sustained. Even assuming that the plaintiff could have been required to comply with his bid in this form of proceeding, the defendants, by their course in ignoring plaintiff's bid, have precluded themselves from demanding that relief, and, as we have seen, the other alternative suggested cannot be adopted, because Elliott never complied with his bid. Under these circumstances there was no other alternative except to order a resale of the property.

The judgment of this court is, that the judgment of the Circuit Court as modified herein be affirmed, and that the case be remanded to that court for the purpose of such further proceedings as may be necessary to carry out the views herein announced.