16478

MIZE v. BLUE RIDGE RY. CO.
(Two Cases)
(64 S. E. (2d) 253)

120

Messrs. *Watkins & Watkins,* of Anderson, *J. Pat Miley,* of Walhalla, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellants,*

Mr. *John M. Schofield,* of Walhalla, *for Respondent,*

*Messrs. Watkins & Watkins,* of Anderson, *J. Pat Miley,* of Walhalla, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellants, in reply,*

*Messrs. Watkins & Watkins,* of Anderson, *J. Pat Miley,* of Walhalla, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellant, on Rehearing,*

*Mr. John M. Schofield,* of Walhalla, *for Respondent, on Rehearing,*

March 19, 1951.

PER CURIAM.

These cases were argued during the June, 1950, term of this Court. On September 25, 1950, an opinion was filed affirming the judgments rendered by the Court below. Subsequently a petition for a rehearing was granted and certain phases of the case were reargued at the December, 1950, term. This opinion will be substituted for the opinion heretofore filed.

About 7:00 p. m. on August 18, 1948, a motorcycle upon which Troy Donald Mize and his nephew, Clyde Edward Mize, seventeen and fifteen years of age, respectively, were riding, collided with a train of the Blue Ridge Railway Company at a crossing in the town of West Union, Oconee County. Troy Mize was operating the motorcycle and his nephew was sitting behind him. Both were killed instantly. These actions were brought to recover damages for the alleged wrongful death of each boy. The cases were tried together and resulted in a verdict for plaintiff in each case for $5,000.00. The only question for determination on this appeal is whether the Court erred in refusing a motion by the Railway Company for a directed verdict upon the grounds that there was no proof of negligence on the part of the defendant and that the plaintiff's intestates were guilty of gross contributory negligence.

Main Street of the town of West Union crosses the track of the Blue Ridge Railway Company at about a right angle. The street is paved and approximately 40 feet wide, with

sidewalks on each side. It forms a part of the State Highway between Seneca and Walhalla. Plaintiff's intestates were traveling along this street in the direction of Walhalla. The train involved in the collision was a mixed one, consisting of 23 cars. It left the depot at Walhalla, a distance of about a mile from the crossing in question, more than two hours behind schedule, and approached this crossing at a speed of about twenty miles an hour. After the engine had passed over the crossing, the motorcycle struck the rear of the tender. The engineer testified that although he kept a proper lookout, he did not observe the motorcycle until it was about 100 feet from the crossing, and it seems to be undisputed that the operator of the motorcycle could not have seen the approaching train until he reached a point approximately 150 feet from the crossing. While not definitely stated in the record, it is fair to assume from the testimony that the obstruction to the view was due to residences and trees on each side of the street.

It is alleged in the complaint that the engineer failed to give the crossing signals, that he failed to keep a proper lookout, and that the headlight was not burning. There is no evidence sustaining the allegation that the engineer failed to keep a proper lookout. There is a conflict in the testimony as to whether or not the headlight was on. There is also some dispute as to whether it was dark enough to require a headlight. While there is testimony to the effect that the street lights had been turned on and that it was beginning to get dark, one witness testified that at the time of the accident he was sitting on his front porch and was able to read a newspaper without difficulty. However, in determining whether or not defendant's motion for a directed verdict should have been granted, we need only consider the allegation that the engineer failed to give the statutory signals. It is the contention of the Railway Company that the plaintiffs' evidence on this issue is of a negative character and entirely too uncertain and indefinite to prevail against positive testimony of various disinterested witnesses that the bell was

rung and the whistle blown as the train approached the crossing.

There are several crossings between Walhalla and West Union, a distance, as above stated, of about a mile. The engineer and fireman testified that the bell was started as the train left Walhalla and rang continuously until after the accident and that the whistle, on account of the close proximity of the various crossings, was blown almost continuously. In addition to this testimony, five persons who at the time of the accident were within a block of the crossing, testified positively that the bell was ringing and the whistle blowing as the train approached.

We turn now to the testimony offered by the plaintiffs on this issue. Two ladies who were walking along the sidewalk of Main Street at a point approximately 200 feet from the crossing, testified that they noticed plaintiff's intestates as they passed on a motorcycle; that they did not hear the bell ring; that they heard the whistle blow for the Kenneth Mills crossing, which the testimony shows was about a half mile from the crossing in question, but did not hear the whistle blow again. Another witness who was employed at an ice plant located between Kenneth Mills and West Union, testified that while sitting on a bench about 150 yards from the railroad track, he heard the train blow for the Kenneth Mills crossing but did not hear it blow again. On cross examination, he testified as follows:

"Q. You just do remember, however, it blew back at Kenneth crossing? A. I did hear it blow at Kenneth crossing.

"Q. And then you didn't listen to see whether it blew any more or not? A. I'm confident that it didn't. Because, I was sitting there and didn't move, and I didn't hear it.

"Q. There wasn't anything to call your attention to the train? You weren't watching the train? Were you? A. No, sir, I was just sitting there."

Another witness who lived between a half and three-quarters of a mile from the crossing in question and who

was sitting on the porch of his home which faced the rail-road track, testified in part as follows: "As I have told you, the train came down at·a late hour, off schedule, carrying many cars, without a headlight. It wasn't ringing the bell. It was alarming to me. And I watched it and listened,. and so it blew at the crossing above my house and the one below my house, Kenneth Mill Crossing, and I paid particular attention, listening to the noise of it, and so hearing, and I wondered what had happened to it. The hearing died away after it blowed at the Kenneth Mill. I didn't hear it blow any more."

We think the plaintiffs' testimony was sufficient to warrant submission of the case to the jury on the question of whether the statutory signals were given. It is in direct conflict with that of the engineer and fireman that after leaving Walhalla, the bell rang continuously and the whistle was blown almost continuously. It is true that the testimony of paintiffs' witnesses to the effect that they did not hear the bell ring or the whistle blow as the train approached the crossing is of a negative nature, but ordi-narily in a case of this kind the plaintiff is necessarily con-fined to that class of evidence. At least two of the witnesses for the plaintiffs were in a favorable position to have heard the crossing signals had they been given. .There were no distracting circumstances. We have not only one but several persons similarly situated saying that they did not hear the signals. The fact that these witnesses heard the whistle blow for the Kenneth Mills crossing is indicative of the fact that they were not inattentive.

While plaintiffs' testimony might have been insufficient to support a finding that the statutory signals were not given under the rule followed in some jurisdictions (see extensive annotation in 162 A. L. R., beginning on page 9), under our decisions the trial Judge was correct in submitting this issue to the jury. *Callison v. Charleston & W. C. R. Co.,* 106 S. C. 123, 90 S. E. 260, 262; *Glenn v. Southern Railway*

*Co.,* 145 S. C. 41, 142 S. E. 801; *Carter v. Atlantic Coast Line R. Co.,* 192 S. C. 441, 7 S. E. (2d) 163. In the *Callison case,* the Court said: "Defendant's contention, however, is that the evidence does not warrant a reasonable finding that the bell was not rung, because two of defendant's witnesses, the fireman and engineer, testify positively that it was, while plaintiff's testimony is of a negative character—merely that he did not hear it. Clearly that contention relates only to the weight or probative value of the testimony, which it is the exclusive province of the jury to consider, at least in the first instance; that finding being subject to correction and control on motion for new trial."

The remaining question is whether the defendant was entitled to a directed verdict upon the ground that plaintiff's intestates were guilty of gross contributory negligence as a matter of law. In considering this question, it must be kept in mind that if the statutory signals were not given, which was a question for determination by the jury, simple negligence would not preclude recovery but it would be necessary to show that plaintiff's intestates were guilty of contributory "gross or wilful negligence." Section 8377 of the 1942 Code; *Nofal v. Atlantic Coast Line R. Co.,* 175 S. C. 94, 178 S. E. 541; *Bishop v. Atlantic Coast Line R. Co.,* 213 S. C. 125, 48 S. E. (2d) 620.

In the case of Troy Donald Mize, it is alleged in the answer that his death "was due to his own carelessness, recklessness and wantonness in failing to exercise the slightest care to ascertain the approach of defendant's railway train to the highway crossing, and in failing to stop, look and listen to detect the approach of the said train, and in driving the motorcycle on which he was riding into and against the side of the train, after the train had entered upon the crossing, all of which contributed with any negligence, willfulness or wantonness of the defendant as a proximate cause of his death, without which the same would not have been suffered."

There is · abundant evidence tending to show that the driver of the motorcycle kept a proper lookout. Indeed, several of the defendant's witnesses testified that when the motorcycle was about 100 feet from the crossing, the driver was seen standing upon the brakes in an apparent effort to stop. It will be recalled that due to obstructions, he could not have seen the train until within 125 or 150 feet of the crossing.

The major contention of the defendant with respect to contributory negligence is that the motorcycle was being driven at an excessive rate of speed. We held in the previous opinion that the evidence was sufficient to warrant the submission of this question to the jury. A petition for a rehearing was granted and a reargument of the case ordered upon the questions of (1) whether the issue as to the speed of the motorcycle was raised by the answers and (2) if so, whether under the evidence plaintiff's intestates were guilty alleges specific acts of negligence the plaintiff is restricted of gross contributory negligence as a matter of law in approaching the crossing in controversy at an excessive rate of speed.

We think it is clear that the answers do not raise the question of gross contributory negligence with reference to the speed of the motorcycle. This seems to be the view entertained by defendant's counsel, for they state in their brief: "We concede the speed of the motorcycle is not expressly, or, in so many words, defined as one of the elements of recklessness and wantonness, or gross negligence, pleaded in the second defense in the answers" The applicable rule is stated in *Goodwin v. Charleston & W. C. R. Co.,* 76 S. C. 557, 57 S. E. 530, 531, as follows: "Where a complaint is general in its allegations of negligence, and the defendant does not move to have the allegations made definite and certain, the plaintiff may introduce under the general allegations any competent evidence to support the charge of negligence * * *; but where the complaint

to proof of such acts of negligence * * *. So when a complaint contains allegations of specific acts of negligence, and also general allegations of negligence, the general allegations should be regarded as explained and controlled by the specific acts of negligence averred, in the absence of some clear indication in the complaint that the general allegations were intended to cover other acts of negligence than those alleged."

Under the foregoing rule the defendant will be confined to the specific acts of contributory negligence alleged in its answers which, as above stated, do not include a specification that the motorcycle was being driven at an excessive rate of speed.

Not only was the question not raised by the answers but it was not included in the motion for a directed verdict made at the conclusion of the testimony. The grounds of this motion in so far as it relates to contributory negligence is as follows: "That the only reasonable inference of which the evidence is susceptible is that the plaintiff's intestates had the collision attempting to go over and went upon the crossing without stopping, looking, or listening before doing so, without exercising the slightest degree of care for their safety, and that such conduct on the part of the plaintiff's intestate was the direct and proximate cause of the injuries, and constituted not only negligence, simple negligence, but gross negligence, which would bar any recovery as a matter of law."

Indeed, the question is not specifically raised by the defendant's exceptions on appeal to this Court. The exception relating to the defense of gross contributory negligence is as follows: "Error in refusing the motions for directed verdicts on the second ground urged, to-wit: No reasonable inference can be drawn from the testimony other than that the gross negligence of the deceased motorcycle riders was the sole or contributing proximate cause of their injury."

We, therefore, have before us the unusual situation where the principal contention with reference to gross contributory negligence is not raised by the answers, not incorporated in the motion for a directed verdict, and not specifically alluded to in the exceptions on appeal. Counsel for defendant say, however, that the question is properly before this Court because testimony as to the speed of the motorcycle was introduced by both parties' without objection and was considered by the trial Judge as an element of contributory negligence in passing on the motions for a directed verdict and for judgment *non obstante veredicto*. As the charge is not incorporated in the record, we have no means of knowing whether the speed of the motorcycle was submitted to the jury as an alleged act of contributory negligence.

It is true that even though an act of negligence is not specified in the pleadings, if testimony relating thereto is introduced without objection, such act of negligence may ordinarily be considered by the jury. In other words, by failing to make timely objection, the variance between the allegation and proof is waived. *Gowns v. Watts Mill,* 135 S. C. 163, 133 S. E. 550; *Taylor v. Winnsboro Mills,* 146 S. C. 28, 143 S. E. 474. It may be seriously doubted whether this rule is applicable to the facts of this case because the testimony relating to speed, although not alleged as an act of contributory negligence, was probably admissible as a circumstance to be considered by the jury in passing on the acts of negligence which were alleged in the answer. It was perhaps on this theory that both parties introduced testimony as to the speed of the train notwithstanding the fact that there was no allegation in the complaint that the train was being operated at an excessive rate of speed. But apart from this consideration, the question of excessive speed in approaching the crossing was not raised in the motion for a directed verdict and the defendant is confined on this appeal to the grounds upon which said motion was made in the Court below. We have not over-

looked the fact that the trial Judge discussed the question of speed in passing on the motion for a directed verdict but this action does not have the effect of enlarging the grounds upon which said motion was made.

There is also the added difficulty in this case of the generality of the exception in this Court relating to the question of gross contributory negligence. It is entirely too indefinite in that it does not specifically point out the particulars in which it is claimed that plaintiff's intestates were guilty of gross contributory negligence. *Fishburne v. Smith*, 34 S. C. 330, 13 S. E. 525.

We regret that the foregoing circumstances preclude us from determining whether the plaintiff's intestates were guilty of gross contributory negligence as a matter of law in approaching this crossing at an excessive rate of speed, but a consideration of this question would necessitate entirely too great a departure from the rules of orderly procedure.

Judgment affirmed.