17153

JAMES E. HOFFMAN, Respondent, v. SOUTH CAROLINA STATE
HIGHWAY DEPARTMENT, Appellant

(92 S. E. (2d) 885)

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, and *Paulling & James,* of Darlington, *for Appellant,*

*Messrs. James P. Mozingo III,* and *John L. Nettles,* of Darlington, and *Jennings & Jennings,* of Bishopville, *for Respondent,*

334

May 2, 1956.

LEGGE, Justice.

This is an action for damages for personal injuries sustained by the plaintiff on the night of Saturday, October 11, 1952, when the automobile in which he was riding left the paved highway (Route S31-22) on which it had been traveling, and struck a tree and a barn. The complaint alleged negligence on the part of the defendant in the following particulars:

"(a) In constructing and maintaining said state highway without erecting and maintaining proper or any signs, signals or warning devices to warn the plaintiff and the driver of the automobile in which he was riding and others using said highway of the approach of said curve and of the other defects existing in said highway, as hereinafter set forth;

"(b) In constructing and maintaining said state highway with a curve in same, which was too sharp for the safety of the public traveling thereon;

"(c) In constructing and maintaining said state highway with a sharp curve in same and without being sufficiently banked on said curve;

"(d) In constructing and maintaining said highway with large roots of a hickory tree within the right-of-way of said highway, all of which made said highway a hazard for the public traveling thereon;

"(e) In constructing and maintaining said state highway with soft shoulders and without any signs or notices to warn the traveling public of the existence of the same;

"(f) In constructing and maintaining said state highway with shoulders too narrow for the safety of the public traveling thereon;

"(g) In failing to construct and maintain said state highway at the time and place in question with shoulders thereon sufficiently wide to protect the users of said highway".

Defendant's motions for non-suit and for direction of verdict were overruled. Of the specifications of negligence above quoted, b, c and d were, upon defendant's motion, stricken at the conclusion of the testimony as being without evidentiary support. Verdict was for the plaintiff; and the defendant has appealed on numerous exceptions charging, among other things, that the trial judge erred in refusing its motions for non-suit and direction of verdict upon the ground that the evidence failed to show actionable negligence on its part.

Route S31-22 is a farm-to-market road between Lamar in Darlington County, and Bishopville, some 15 miles to the west, in the adjoining county of Lee. The paved portion of the road is twenty (20') feet wide, and on either side is an unpaved shoulder about four (4') feet in width. Some seven (7) miles west of Lamar, the road curves northward, or to the right from the standpoint of one driving toward Bishopville. At this point, and for some distance to the east of it (*i. e.* in the direction of Lamar), the road is on a low fill. To the south of the road, near the Lamar end of the curve, and twenty-nine (29') feet from the edge of the paved roadway, is a hickory tree; between the tree and the highway is a dirt road; and forty-eight (48') or fifty (50') feet west of the tree is a barn, the nearest point of which is twenty-five (25') feet from the edge of the paved roadway. Photographs of the locus introduced into the evidence by the plaintiff show that the land adjacent to the inside of the curve, on the right of the road, as one travels from Lamar towards Bishopville, is

an open field, so that view of the curve is unobstructed for much of its length. It is undisputed that there were no signals or markers indicating the curve. As to whether there was a center-line painted on the pavement, the testimony is conflicting.

The Ford automobile, practically new, was occupied by four young people, all of whom lived in or near Lamar. Charles Windham, its owner, was driving, and in the front seat with him was his "date", Ernestine Andrews. In the rear seat were James Turner and the plaintiff, James E. Hoffman. They were on their way from Lamar to Lucknow, some six (6) miles beyond Bishopville, where they were to pick up Hoffman's "date", and then they were going back to a dance at Bishopville.

The plaintiff testified that as they were approaching the curve he saw the bright lights of a car coming towards them; that these lights blinded both him and Windham; that Windham, still on the "straightaway" and about six hundred (600) feet from the center of the curve, drove the car over to the right and off the paved roadway; and that "I felt a jerk and bumping along and when he pulled it back on the road it just went straight on off". He "guess" that the speed of the car at the time of the accident was about fifty or fifty-five miles an hour. After the car went off the left side of the road, he knew nothing until he woke up lying beside the barn.

Charles Windham, who "imagined" that he was driving "around 50 or 55" when the accident happened, testified as follows: "Well, we was driving along and met this car and its lights were bright and I pulled over to the right so I would give him a lot of room to pass to keep from hitting us and I ran off the road and I felt it drop bump and I pulled a little to the left and come back on the road and in just a second over the embankment". He also testified on direct examination that the distance from the point where his car went off on the right-hand side of the road to the

point where it went off on the left-hand side was, roughly, thirty yards. On cross examination he testified:

"Q. What caused you to leave the paved part of the highway, Charles? A. The lights blinded me.

Q. The lights blinded you. An on-coming car blinded you? A. That's right.

Q. Was that car on the Lamar side of the curve? A. Yes, sir.

Q. After discovering that you were off the highway, what did you do to bring your car under control? A. I just eased the wheel back a little to the left and held it. I figured that it would ride on there to keep from smashing it quick."

James Turner testified: "Well, it was a sharp curve and we were coming along and ran off the road. This car met us and blinded us and wouldn't dim his lights and we ran off the road and Charles pulled the car back on the highway and was going across, evidently thought it was a straight road and ran off this drop off on the other side". And further:

"Q. After Charles came back on the highway, did he ride down the lefthand shoulder? A. No, sir, he just went right straight across the highway and right down.

Q. Did he ride down the right-hand shoulder? A. Just a little piece.

Q. About how far? A. About five or six feet.

Q. From the time that Charles ran off the right-hand shoulder to the time that he left the shoulder on the left-hand side, what was the length of time involved? A. I would say just a matter of seconds.

Q. During that time, did you have any opportunity to tell Charles anything? A. No, sir.

Q. About how fast were you going? A. 50 or 55 miles an hour."

The only other eyewitness was Ernestine Andrews. She was killed.

Mr. Woodrow Coker, in whose front yard the tragedy occurred, was eating supper when he heard the crash. He

picked up his flashlight and ran out into the yard. James Turned was lying on the "porch" of the barn, his leg "hanging up in some nails". He begged Coker to "take his leg down", and Coker did so and tried to straighten the leg as best he could. About that time Coker saw Windham, who asked him to help find the girl. Hoffman was found lying beside the barn. Ernestine Andrews was found about thirty feet beyond where the automobile was lying; and Coker, with Windham's help, put her in Coker's car, and drove to the Lee County Memorial Hospital, where she died about thirty minutes later.

Corporal Parker, of the State Highway Patrol, arrived at the scene shortly after the accident, and next morning he and Mr. Sellers, the coroner of Lee County, examined the locus and with a steel tape made certain measurements. They both testified as follows:

No skidmarks were found on the right-hand side of the highway. Skidmarks from the tires of the Windham car extended, on the left-hand side of the paved roadway, a distance of one hundred fifty (150) feet to the point where they left the pavement. From that point, marks on the ground showed that the car had traveled one hundred thirty-nine (139) feet to the hickory tree, on which it left a bruise or scar about three feet above ground and another five or six feet above ground. From the hickory tree to the barn, against which the car was lying, upside down and completely wrecked, the distance was forty-eight (48') feet, and there were no marks on the ground between the tree and the barn.

Respondent was permitted, over appellant's objection, to offer testimony tending to show that at or near the point where the car ran off the right-hand edge of the pavement the unpaved shoulder was some two or three inches lower than the paved roadway. Exception 3 charges error in the admission of this testimony.

> In *Bunton v. South Carolina State Highway Department*, 186 S. C. 463, 196 S. E. 188, it was held that the duty rested upon the defendant not only to keep

the paved portion of the highway in reasonably safe condition for travel by motor vehicles, but also to maintain the shoulders in such condition as to meet the reasonable needs of motorists who might under the requirement of the circumstances have occasion to use them. Without intending the slightest departure from the rule thus laid down, we point out that common prudence requires the exercise of greater caution on the part of a motorist who leaves the pavement and drives on the dirt shoulder of a farm-to-market road than would be required of one who drives on the paved shoulder of a main highway. Moreover, it is a matter of common experience that an unpaved shoulder is seldom, if ever, on exactly the same level as the adjoining pavement. But whether testimony such as that above referred to, concerning the "drop" from the pavement to the shoulder, would be sufficient to carry to the jury the issue of negligence on the part of the State Highway Department, is a matter that we are not required to pass upon in the instant case, for the reason that the complaint contained no specification charging negligence in that regard. Such testimony should, therefore, have been excluded. *Taylor v. Winnsboro Mills,* 146 S. C. 28, 143 S. E. 474; *Mize v. Blue Ridge Ry. Co.,* 219 S. C. 119, 64 S. E. (2d) 253.

Careful consideration of all of the evidence convinces us that there is in it nothing from which the conclusion of actionable negligence on the part of the defendant in any particular charged in the complaint might reasonably have been drawn.

Specification (a) charged negligence in failing to erect and maintain signs, signals or warning devices to warn (1) "of the approach of said curve", and (2) "of the other defects existing in said highway, as hereinafter set forth". Under the testimony for the plaintiff which we have reviewed, absence of such warning "of the approach of said curve" could not have been the proximate cause of the accident because: (1) the view of the curve was unobstructed for a considerable distance; (2) the presence

of the curve was, of necessity, emphasized by the lights of the oncoming car rounding it; and (3) all of its surviving occupants testified that the Windham car ran off the right side of the paved roadway before it reached the curve, traveled on the right shoulder a very few feet, and then went "straight on off" the left side when Windham pulled it back on the pavement.

Subdivision (2) of specification (a) alleges no negligent act or omission, but simply refers to the "other defects * * * as hereinafter set forth".

Specifications (b), (c) and (d) were eliminated by the trial judge, as before mentioned. Specification (e) charges that the shoulders of the road were too soft, and specifications (f) and (g) charge that they were not wide enough; but there is no evidence from which, by any stretch of the imagination, it could be concluded that the narrowness of the shoulders or the character of their soil was a proximate cause of the accident.

There was, in our view of the evidence, a total lack of proof of actionable negligence on the part of the defendant.

Reversed and remanded for entry of judgment in favor of the appellant.

STUKES, C. J., and TAYLOR, OXNER and Moss, JJ., concur.