18344

Robert WADE, Respondent, v. Edwin COPLAN, d/b/a Coplan's Supermarket, Appellant

(142 S. E. (2d) 201)

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Appellant,*

*Roy A. Powell, Esq.,* of Columbia, *for Respondent,*

May 11, 1965.

Brailsford, Justice.

The plaintiff sustained a hernia while at work for the defendant and brought this common law tort action to recover damages for his injuries. The defendant appeals from a judgment for plaintiff.

The plaintiff had been employed for nineteen years as meat cutter at the defendant's store in the City of Columbia, known as Coplan's Supermarket. In his work plaintiff, who is five feet tall and weighs 120 pounds, customarily handled without assistance forequarters of beef weighing from 90 to 100 pounds. On the Saturday evening in question, plaintiff removed such a forequarter from an $8 \times 10$ foot walk-in cooler and placed it on a cutting block. He was injured when he later re-entered the cooler and undertook to hang the beef on an overhead hook.

The complaint alleges that plaintiff, while engaged as above stated, "did slip and injure himself." It further alleges that the defendant negligently failed to provide the plaintiff with a safe place to work, in that the activities of other employees under the defendant's direction, in wetting and icing produce for storage in the walk-in refrigerator, caused the floor thereof to become "wet and slippery, and cluttered with fragments of produce and lumps of ice."

The answer denies the allegations of negligence on the defendant's part and pleads the affirmative defenses of contributory negligence and assumption of risk. We are satisfied that the evidence, viewed in the light most favorable to the plaintiff, was insufficient to raise a jury issue as to causative negligence on the part of the defendant. Therefore, the court should have directed a verdict on the defendant's timely motion therefor. Our reasons for this conclusion will be stated as briefly as may be. There is no need for a discussion of the other issues raised by the exceptions.

Plaintiff has never settled on an explanation of what caused his injury. In a letter written to the defendant by plaintiff's counsel before the action was brought, it was stated that plaintiff "slipped on a piece of weiner on the floor, causing a hernia in his right side."

As already indicated, the complaint alleged that plaintiff slipped and injured himself because the floor of the refrigerator was "wet and slippery, and cluttered with fragments

of produce and lumps of ice." Plaintiff's own testimony lends no support to these critical allegations of the complaint. He was examined and cross examined about the condition of the floor at several points in his testimony. He made various responses: "that (the floor) was not wet"; that it was so foggy in the box that he couldn't see the floor; that he could not "recall whether the floor was wet"; that the box was dry; that it was dry on Friday night, but he "didn't notice whether it was dry on Saturday night because of the fog." He did not testify that there was anything unusual about the floor or attribute his fall to its condition or to anything upon it.

Quoting from his testimony:

"Q. Only thing you know is you slipped, is that right?

"A. That's right, but I can't recall whether the floor was wet."

We quote other excerpts from his testimony relating to the circumstances of the fall:

"Q. How did you carry that beef when you lifted it?

"A. I catch it in the front leg and on the back, and lift it up and carry it on in.

"Q. That's pretty heavy for a little man like you, isn't it?

"A. Yes, sir; and after I get in the box I have to lift it up on a hook; the hook was in the middle of the box, overhead.

\* \* \*

"Q. On this particular night, did they leave the buggies on the outside?

"A. No, they had rolled (one) in.

\* \* \*

"Q. Well, now, anybody going into the box, and one buggy was in there, would that block his way or not?

"A. Yes, sir, it would block your way.

"Q. In other words, could you get around; was it possible to get around it?

"A. After I raise the meat I squeeze on by, I went to swing the meat on the hook, my feets slipped, and down I went. When I came out I told them I felt like something

busted in my side and Mr. Coplan he got me a box of Bufferin."

The plaintiff was alone in the box at the time of his fall and no other witness undertook to testify to the cause of his injury, which was diagnosed as a right inguinal hernia. Plaintiff failed to testify whether the accompanying pain occurred before or after his fall, but he gave his surgeon the history that "he did this lifting meat on the job."

Two of the defendant's employees at the time of this occurrence were called as witnesses by the plaintiff. The first of these, one Curtis Goodman, described himself as delivery boy and head produce man. It was his duty at closing time, with the assistance of two other employees, to remove produce from the display counter and store it in refrigerated bins under this counter. Any produce beyond the capacity of these bins was stored in the walk-in cooler. On this occasion, the surplus produce was placed in two wire carts or buggies of the type common to self-service grocery stores. One of these buggies was placed in the cooler before the beef forequarter had been returned to it. This was contrary to custom and to plaintiff's instructions to these employees because the presence of such a cart tended to crowd the cooler and interfere with the performance of plaintiff's work. In addition, one or two sacks of corn, after being immersed in water and drained to some extent, were taken into the cooler and hung over two steel barrels in which crushed ice was stored. This ice was used during the course of the day to keep perishable commodities in the display counters fresh, and, according to some of the testimony, ice was used on the surplus produce placed in the meat cooler for overnight storage.

The only testimony which tended to establish that *any* water, ice or vegetable particles had fallen upon the floor of the cooler was that of the witness Goodman. We quote in full this portion of his testimony:

"Q. Was that floor of the walk-in freezer what was it covered with?

"A. It was covered with sawdust.

"Q. Now, Curtis, can you tell us when you carried the sacks of corn, or cabbage, or whatever they were, from that sink, were they still dripping water?

"A. Yes, sir.

"Q. Did any drip on that floor?

"A. Well, it had to.

"Q. Can you tell me whether or not when you took ice out of those bins to put on those vegetables and that produce, can you say whether or not any ice fell on that floor?

"A. Yes, it couldn't help from it cause the buggy was not solid, it's wire, it's built with wire and has to have holes in it.

\* \* \*

"Q. So, there is ice on the floor and fragments of vegetables?

"A. Right, sir."

A covering of sawrust was kept on the wooden floor of the walk-in cooler. This was done to absorb any excess moisture, keep the floor dry and improve traction.

Plaintiff was responsible for keeping the cooler in good condition. On the night before his injury he had cleaned the floor and put down fresh sawdust. The clear inference from the record is that this was ordinarily a weekly task rather than a daily one. There is nothing in the testimony to suggest that water, ice or vegetable fragments had fallen upon this fresh sawdust in sufficient quantities to wet the floor or to make it slippery or hazardous in any way. There is not the slightest evidence of the presence of water or any foreign matter on the floor at the point where plaintiff's feet "slipped", while he was lifting a disproportionately heavy burden above his head. A conclusion that plaintiff's fall resulted from the presence of water, ice or vegetable fragments on the floor would of necessity rest upon conjecture rather than upon evidence. "The cause of the accident is purely conjectural. \* \* \* 'A servant cannot recover where it is merely a matter of conjecture, surmise, speculation, or supposition, whether the injury was or was not due to the negligence of the master.' 2 Labatt on Master

& Servant, § 837." *Green v. Railway,* 72 S. C. 398, 404, 52 S. E. 45, 47.

For the reasons stated, the evidence was insufficient to raise a jury issue as to whether plaintiff's injury resulted from defendant's negligence in any of the particulars set forth in the complaint. Plaintiff further contends that the evidence as to fog in the cooler and as to the crowded conditions resulting from the unforeseen presence of the grocery cart was sufficient to raise an inference that the defendant failed in his duty to provide a safe place for plaintiff to work.

We are aware of the rule that ordinarily, even though an act of negligence is not specified in the complaint, if testimony relating thereto is introduced without objection, such act of negligence may be considered by the jury. *Mize v. Blue Ridge Ry. Co.,* 219 S. C. 119, 126, 64 S. E. (2d) 253, 258. As pointed out in Mize, it is doubtful whether this rule should ever apply to evidence which is relevant and admissible for another purpose than proving actionable negligence. Here, the testimony as to visibility and crowding was relevant at the time it was offered on the issue of contributory negligence and could not have been kept out. The rule is inapplicable here for the additional reason that the trial judge several times instructed the jury that plaintiff could recover only upon proof of negligence on the part of the defendant in one or more of the particulars set out in the complaint. Furthermore, the plaintiff testified that he had already "squeeze on by" the cart and "went to swing the meat on the hook" when his feet slipped. The testimony simply does not raise a reasonable inference that plaintiff encountered a hazard which good visibility would have enabled him to avoid, or that the previous necessity for squeezing by the cart contributed to the slipping of his feet as he "went to swing the meat on the hook."

Reversed and remanded for entry of judgment for the defendant.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.