24393

The STATE, Respondent v. Eric Dwayne FORNEY, Appellant.

(468 S.E. (2d) 641)

Supreme Court

*Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, G. Thomas Chase, Assistant Attorney General,* Columbia; and *Solicitor Thomas E. Pope,* York, *for respondent.*

Heard Feb. 6, 1996.

Decided Mar. 25, 1996.

MOORE, Justice:

Appellant was convicted of murder, criminal conspiracy, and armed robbery for the killing of Officer Brent McCants of Rock Hill. The jury failed to return a recommendation of death and appellant was sentenced to life imprisonment. We affirm.

## FACTS

Appellant was indicted along with co-defendant Mar-Reece Hughes for the murder of Officer McCants who was killed during a routine traffic stop. Officer McCants's last contact with the police dispatcher was a request to run a check on license tag number EMF-313. Two passers-by noticed his police car on the side of the road with its lights flashing and saw McCant's body on the ground with two men crouched over it. The two men were seen driving off in a car with a tag number "313". McCants had been shot several times and his police-issue walkie-talkie had been stolen.

A short time later, a car with tag number EMF-313 was located. Appellant was arrested nearby in possession of a 9mm semiautomatic pistol which was later identified as the murder weapon.

The trial judge severed the trials of appellant and Hughes. Appellant testified he was with Hughes at the time of the murder but that Hughes was the triggerman.

## ISSUES

1. Was there a *Batson*[1] violation?
2. Was prior bad act evidence improperly admitted?
3. Was evidence of Hughes's admission against penal interest improperly excluded?

## DISCUSSION

### A. *Jury Selection*

The solicitor struck five black jurors for vacillating responses to questions regarding the death penalty. Appellant claims a *Batson* violation on the ground this facially neutral reason was pretextual.

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986).

Whether the solicitor's proffered reason for exercising a peremptory strike is nondiscriminatory must be determined by examining the totality of the facts and circumstances in the record. *Riddle v. State*, 314 S.C. 1, 443 S.E. (2d) 557 (1994). Vacillating responses regarding the death penalty will support a finding the reason for the strike was facially neutral. The defendant may show this reason is pretextual, however, by demonstrating the solicitor applied the allegedly neutral standard in a discriminatory manner. *Riddle v. State, supra; State v. Davis*, 306 S.C. 246, 411 S.E. (2d) 220 (1991).

Appellant contends the solicitor's reason for striking five black jurors was pretextual because he seated a white juror, Juror Leuck, who also vacillated on the death penalty. Juror Leuck hesitated only on the issue of giving a non-triggerman death. We conclude the trial judge did not abuse his discretion in finding the strikes in question racially neutral.

### 1) *Juror Breach*

First, appellant never objected on the ground of pretext when Juror Breach was struck and this issue is not preserved for review. *State v. Robinson*, 305 S.C. 469, 409 S.E. (2d) 404 (1991).[2] In any event, in addition to vacillation responses on the death penalty, the solicitor also cited Juror Breach's demeanor (that she seemed in a hurry and impatient to leave) and the fact she stated she could not even find the defendant guilty. These reasons are supported in the record.

### 2) *Juror Paige*

Again, the issue of pretext is not preserved as to this juror. *State v. Robinson, supra.* In any event, the extent of Juror Paige's vacillation is great in comparison with Juror Leuck who never said she did not believe in the death penalty as Juror Paige repeatedly did.

### 3) *Juror Gathers*

Again, the issue of pretext is not preserved as to this juror. *State v. Robinson, supra.* Further, Juror Gathers's vacillating responses indicated her hesitance to impose the death penalty

---

[2] Appellant did not raise the issue of pretext until the fourth juror, Juror McNeil, was struck on the ground of vacillating responses.

in all circumstances and not only regarding a non-triggerman. This response distinguishes her from Juror Leuck.

### 4) *Juror McNeil*

Although the issue of pretext is preserved as to this juror, her vacillating responses are distinguishable from those of Juror Leuck. Juror McNeil repeated several times that she did not believe in the death penalty at all compared to Juror Leuck who hesitated only regarding a non-triggerman.

### 5) *Juror Young*

This juror is similar to Juror Leuck in that he hesitated about the death penalty only when asked about a non-triggerman. In addition to this reason, however, the solicitor also cited Juror Young's physical condition and the fact that he was late for court. These reasons are supported in the record.

In conclusion, the trial judge did not err in finding the solicitor's reasons sufficient under *Batson* since appellant failed to carry his burden of showing pretext. Appellant's remaining argument regarding jury selection is without merit and we dispose of it pursuant to Rule 220(b)(1), SCRCP. *See State v. Longworth*, 313 S.C. 360, 438 S.E. (2d) 219 (1993) (trial judge's ruling regarding disqualification will not be reversed unless wholly unsupported by the evidence).

### B. *Evidentiary Issues*

Over appellant's objection, the trial judge admitted evidence that appellant and Hughes stole the automobile with tag number EMF-313 in Charlotte, North Carolina, approximately two hours before the killing of Officer McCants.

The victims of the North Carolina armed robbery, two college students named Sean and Beth Ann, testified as follows. At approximately 8:00 p.m. on September 25, 1992, Sean and Beth Ann pulled into the parking lot of a Charlotte restaurant. They were in Beth Ann's gray 1986 Buick Century, New York license tag number EMF-313. Sean was driving. As they exited the car, appellant and Hughes approached. Appellant went to the driver's side of the car and confronted Sean with a gun while Hughes went to the passenger side. Appellant made Sean lie down on the pavement and robbed him while holding the gun to Sean's head. Meanwhile, Hughes brought Beth Ann around to the driver's side of the car. Appellant

handed her car keys he had taken from Sean and had her unlock the door. Appellant got into the driver's side of the car and Hughes went around to the passenger side. As the two men drove off, appellant said to Sean, "If you move, we'll kill your whore."

Appellant claims the prejudicial effect of the specific evidence of the threat to kill Beth Ann outweighed its probative value and should not have been admitted. Appellant relies on *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987) (*Johnson I*), in which this Court found unfair prejudice in the admission of prior bad act evidence because it was excessively detailed and established no material fact or element of the crime.

The determination of the prejudicial effect of prior bad act evidence must be based on the entire record and the result will generally turn on the facts of each case. *State v. Johnson*, 306 S.C. 119, 410 S.E. (2d) 547 (1991) (*Johnson II*). Details of prior bad act evidence that may not be admissible are deemed harmless where they are minimal. *Id.*

In this case, the fact appellant was the gunman during the North Carolina robbery was relevant to establish it was appellant and not Hughes who actually killed McCants. This evidence served to contradict appellant's testimony that Hughes had the gun and he, appellant, was merely present at the scene of McCants's killing and did not participate.[3] Accordingly, this prior bad act evidence was relevant and admissible under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), to establish appellant's intent and his identity as the gunman. Evidence of the expressed threat to kill Beth Ann is of minimal impact in the context of the properly admitted evidence of appellant's use of a deadly weapon during the North Carolina armed robbery. Accordingly, even if evidence of the expressed threat was improper, its impact was minimal in the context of the entire record and any error is harmless beyond a reasonable doubt.

Co-defendant Hughes invoked his fifth amendment right against self-incrimination and refused to testify at appellant's trial. Appellant then proffered evidence that Hughes had ad-

---

[3] Appellant testified he took the gun from Hughes only after McCants was killed in order to prevent any further trouble.

mitted he was the triggerman in McCants's killing. Appellant contends this evidence should have been admitted under *State v. Doctor*, 306 S.C. 527, 413 S.E. (2d) 36 (1992).

Under *State v. Doctor, supra,* an out-of-court declaration against penal interest by an unavailable declarant is admissible to exculpate the accused only if corroborating evidence clearly indicates the trustworthiness of the statement. *See also* Rule 804(b)(3), SCRE (effective September 3, 1995). The trial judge ruled the purported admission by Hughes was not trustworthy.

In this case, the proffered evidence included the following statements allegedly made by Hughes to others:

1) "Hughes has said to me on more than one occasion that he was the one that shot and killed Deputy McCants." (jailhouse informant.)

2) "[Hughes] said he shot Brent McCants and that he would shoot any cracker." (jailhouse informant.)

3) "[Hughes] was just bragging about the way he shot the police, that he shot him in the chest and then he got out of the car and shot him in the back of the head." (jailhouse informant.)

4) "[Hughes] just blurted out, 'I'm guilty, I'm guilty.'" (investigation officer.)

5) "[Hughes] said he was going to get him another white boy before they fried him." (prison guard.)

First, the trial judge did not abuse his discretion in excluding the statements to the three jailhouse informants because the evidence does not clearly indicate they are trustworthy. There is no independent evidence corroborating Hughes's statements that he killed McCants. *Cf. State v. Doctor, supra* (unavailable declarant's statements against penal interest were corroborated by the testimony of *other witnesses to the crime* and were therefore held to be trustworthy). Further, one proffered defense witness, who said he saw Hughes with a gun a couple of weeks before the murder, admitted on cross-examination that Hughes expressly denied killing McCants shortly after the murder took place. This witness was a friend to Hughes and the statement denying responsibility was made closer in time than any of the statements to jailhouse informants. Accordingly, the statement denying responsibility is in fact more trustworthy than

the incrimination statements to jailhouse informants. *See United States v. Guillette*, 547 F. (2d) 743 (2d Cir. 1976).

Further, Hughes's statement to the investigating officer ("I'm guilty") and the prison guard ("I'm going to get me another white boy") do not exculpate appellant and therefore are not admissible under *State v. Doctor, supra.* Exculpatory evidence is that which creates a reasonable doubt about the defendant's guilt. *State v. Goodson*, 276 S.C. 243, 277 S.E. (2d) 602 (1981). These vague statements by Hughes do nothing to create a reasonable doubt about appellant's guilt since it is not even clear to what they refer. We conclude the trial judge did not abuse his discretion in refusing to allow the proffered testimony of Hughes's alleged statements against penal interest.

Affirmed.

FINNEY, C.J. and WALLER and BURNETT, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.